Wright, J.,
delivered the opinion of the Court.
This action was instituted by McGuire against Byram, to recover damages for the loss of his jack. The declaration has two counts: one in trover, and the other in case for negligence. The jury found for the plaintiff, and the defendant *531 has appealed to this Court. The plaintiff and defendant were neighbors — residing within three-fourths of a mile of each other. The jack of the former escaped from his enclosure, and the next morning was iound dead at the, shop of the defendant— upon his land, and within two hundred yards of his dwelling.
The proof shows that the jack followed a jennet and colt belonging to the defendant’s son to the shop, where the der fendant’s slaves were at work, and that they caught him and tied him to a tree near the shop, by a bridle, to keep him from doing mischief. That in the evening, about sundown, the de: fendant, who had been absent, came home, saw the jack tied, ascertained from his slaves how he came there, and instructed them to carry him home, which they, in his presence and hearing, and apparently with his sanction, declined to do, assigning as a reason that the plaintiff would soon be after him. He was not taken away by the plaintiff, and there is nothing to show that he was aware of his escape. Neither did the defendant send him home, or have him secured in a stable or lot. The evidence tends to show that the jack was hung, or choked to death during the night, by means of a chain attached to his neck and the tree; whether wilfully and on purpose, or from negligence and want of care, is not very distinctly disclosed-. Nor does it appear, clearly, whether it was the defendant or his slaves who actually attached the chain to the jack; and if by his slaves, whether by his direction. But there is proof that he knew he was kept confined at the tree during the greater part of the night; and it is rendered probable, from what we see in this record, that the death of the jack, to say the least of it, was not displeasing to the defendant; he having some dislike to the plaintiff, and being the owner of a rival jack.
The proof shows further, that the fence of the plaintiff was not such as to secure the jack against escape; but that in his habits and disposition he was entirely harmless. :
We think the evidence was such as to warrant the jury in their verdict, and the judgment of the Circuit Court must stand, unless the instructions to the jury are erroneous. This *532 it is said they are, in various particulars. And first, because they were instructed that they might, in their sound discretion, give such increased damages as they thought right and proper, for any aggravating circumstances in the conduct of the defendant, if any such were shown to exist in the proof, so that they were not unreasonable, and did not evince passion or vindictiveness on their part. This instruction is sustained by Wort v. Jenkins, 14 Johns., 352, which was an action for beating the plaintiff’s mare, of the value of $60, so as to cause her death. The judge charged the jury that the plaintiff was entitled to recover the value of the mare, and that if they believed, as he did, that the defendant had whipped her to death, it was a case in which, from the wantonness and cruelty of the defendant’s conduct, the jury had a right to give smart money. The jury found $75. The charge was held right, the Court declaring they would haye been better satisfied with the verdict if tbe amount of damages had been greater and more exemplary. Indeed, the instruction might have been stronger. || In eases of fraud, malice, ■ gross negligence, or oppression, the law, upon authority not' now to be questioned, permits the jm-y to give what it terms-punitory, vindictive, or exemplary damages; in other words, blends together tbe interest of society and of the aggrieved individual, and gives damages not only to recompense the sufferer, hut to punish the offender. Sedgwick, 38, 453, 465. There can be little doubt of the wilful malice, or gross neglect of tbe defendant, — one or the other. Moreover, we are satisfied from the proof, that tbe jury disregarded the instruction, as they scarcely gave the value of the jack.
Again: the Circuit Judge, after instructing the jury correctly as to the liability of the defendant, for the acts of hi» servants .done by his order, direction, or command, or in the course of the performance of his business, and as So his non-liability for their acts or conduct, done or committed without his order, consent, command, or direction, either express or implied, charged them that if he ratified or adopted the acts or doings of his servants, when he came to a full knowledge *533 of them, he thereby made them his owe, though they might not originally have been so, and though he might not have ordered or commanded them to be done. This is said to be erroneous. But, as we think, it is not. It is sustained by Caldwell v. Sacra, 6 Littell, 118. There the death of the plaintiff’s horse had been caused by sticks tied to his tail by the defendant’s negro boy; the horse having frequently •broken into his wheat field. Upon being informed by a wit-mess that he had understood the horse had died from the abuse occasioned by the sticks which had been tied to his tail, Caldwell (the defendant) replied that he was glad of it. The verdict being for the plaintiff, upon a motion for a new trial, the •Court said; “ There is no point of difficulty in the cause. For whether the conduct of the slave was under the direction or ■sanction of the master, is not material; or whether the master’s direction ©r sanction thereof is tested by his express «command, or fey his presence and not forbidding the act; or by other circumstances evincing his approbation, is equally immaterial. He is in either case liable; for the law is, if one ¡agree to a trespass which has been committed by another for >his benefit, this action lies against him, although it was not done in obedience to his command, or at his request. Bac. Ah., see. 4, Title Trespass. A fortiori, ought the master of ¡a slave to be liable in such a ease for the trespass of the slave.” And so are numerous authorities. The rule is thus slated in 2 Hilliard on Torts, 525-6: “An act done for another, fey a person not assuming to act for himself, but for such other person, though without any precedent authority, becomes the act •of the principal, if subsequently ratified by him, whether it be for his detriment, or his advantage.” But it is difficult to hold, upon this verdict and these facts, that, in law, the defendant is not to be regarded as present at this mischief. When he came to a knowledge of what his slaves had done in his absence, he does not repudiate it, and turn the jack loose that he might go to his owner; but permitted them to retain him, and became bound, at least, to reasonable care for his safety. This reasonable care he omitted to bestow; and if he *534 did not wilfully destroy him, or have it done, he suffered bis slaves, whose conduct he was bound to control, in his presence, so carelessly to secure him that he became lost to the plaintiff. I say in' his fresence, because, if not actually with his slaves, the jury were authorized to believe that he was so near, and knew so well what they were doing-, that he must he held to have been present, and liable accordingly. 2 Hilliard on Torts, 527—8, 535.
Neither was the plaintiff guilty of any such negligence as will repel his right to recover. Of what negligence was ho guilty; and how did he, as argued, contribute to the injury ? Why, simply because he did not have a better fence, But that furnishes the defendant no excuse-. The misconduct of the plaintiff, if any, was very remote, and did not occur a-t the time of the injury; while the negligence of the defendant, to say the least of it, was the immediate cause of the plaintiff’s loss; and with the exercise of prudence he might hav'e prevented it. And certainly the argument can be of n& avail to palliate a wrong inflicted by design.
Affirm the judgment.